**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| MEMPHIS POOL SUPPLY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DAVIS BROWN, BRIAN ROBERSON, | ) | Case No. 2:25-cv-02776-BCL-cgc |
| JACOB HISAW, DANIEL BROWN, | ) | |
| NICHOLAUS HOLTZCLAW, AND JOHN | ) | |
| DOES 1-50, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING DEFENDANTS' JOINT MOTION TO DISMISS**

Before the Court is Defendants Daniel Brown, Brian Roberson, Davis Brown, Jacob Hisaw, and Nicholaus Holtzclaw's ("Defendants") Motion to Dismiss. Doc. 35. For the following reasons, Defendants Motion is **GRANTED**.

**BACKGROUND**

Memphis Pool Supply, Inc. ("Memphis Pool") is a family-owned swimming pool contractor based in Memphis, Tennessee, which specializes in custom pool construction, swimming pool renovation, and swimming pool maintenance and service. Doc. 19 at 4. Memphis Pool employed Defendants in its Weekly Service Division, which provides scheduled pool service and maintenance services to customers. *Id*. Plaintiff alleges that in June 2025, it discovered Defendants were performing "side jobs" in direct competition with Memphis Pool. *Id*. at 9-10. Mr. Roberson, acting as manager, was authorized to order chemicals, parts and other products necessary for the other Defendants to perform services for Memphis Pool. *Id*. at 10. Plaintiff claims

that Defendants fraudulently billed Memphis Pool for parts, chemicals, products, and other inventory that were used for unauthorized side jobs. *Id*. at 10. Memphis Pool's internal investigation revealed that Defendants used company vehicles, equipment, inventory, and cellphones to service non-Memphis Pool customers in furtherance of the Defendants' unauthorized side business. *Id.* at 10-11.

Plaintiff filed its operative Amended Complaint on October 3, 2025. Doc. 19. Defendants filed their Motion to Dismiss on October 31, 2025, asserting that Plaintiff failed to state a claim pursuant to 18 U.S.C. § 1962(c), the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Doc. 35. Defendants also argue that as a result, all state law claims should be dismissed for lack of jurisdiction. *Id*. Plaintiff filed its Response in Opposition on December 1, 2025. Doc. 41. Defendants filed a Reply on December 11, 2025. Doc. 41

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Plausibility requires more than factual allegations that demonstrate "a sheer possibility" of unlawful conduct or are "'merely consistent with' a defendant's liability." *Id*. If the factual allegations "do not permit the court to infer more than the mere possibility of misconduct, the complaint . . . has not show[n] that the pleader is entitled to relief" and cannot survive a motion to dismiss. *Id*. at 679.

In determining whether the complaint states a plausible claim, the district court must accept the well-pleaded factual allegations in the complaint as true. *Id*. at 678-79. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 679. In undertaking that analysis, the court "must focus only on the allegations in the pleadings." *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020).

## LEGAL ANALYSIS

Under RICO, it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C.A. § 1962(c). Furthermore, it is "unlawful for any person to conspire to violate [§ 1962(c)]." 18 U.S.C.A. § 1962(d). "To state a RICO claim, [Plaintiff] must plead the following elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006) (internal citation omitted).

Defendants argue that Plaintiff has failed to plead facts showing an "enterprise" or a "pattern of racketeering." Doc. 35-1.

### I.    Enterprise

RICO defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "[A]n association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Ouwinga v. Benistar 419*

3

*Plan Servs., Inc.*, 694 F.3d 783, 794 (6th Cir. 2012). "Put differently, any group that associates for a common purpose qualifies." *United States v. Bailey*, No. 19-2280, 2022 WL 2444930, at *2 (6th Cir. July 5, 2022) (internal citation omitted). "[T]his group need not have a formal structure, … [n]or do group members need to have fixed roles. *Id*. (*citing Boyle v. United States*, 556 U.S. 938, 948 (2009)). "The group need not even have 'a name, regular meetings, dues, established rules and regulations, disciplinary procedures, or induction or initiation ceremonies.'" *Id.* (internal citation omitted).

In their Motion, Defendants primarily cite out-of-circuit cases from the 1980's, ignoring the broad definition the Supreme Court established in *Boyle* in 2009 and since applied in cases following *Boyle*. As *Boyle* made clear, "an association-in-fact enterprise is simply a continuing unit that functions with a common purpose." 556 U.S. at 948. [T]he Supreme Court [] rejected attempts to graft onto the statute formal strictures that would tend to exclude amorphous or disorganized groups of individuals from being treated as RICO "enterprises." *D'Addario v. D'Addario*, 901 F.3d 80, 100 (2d Cir. 2018). "This definition is intentionally broad, designed to stamp out corruption." *Allstate Ins. Co. v. Lint Chiropractic PC*, 735 F. Supp. 3d 833, 842 (E.D. Mich. 2024).

In its Complaint, Plaintiff has sufficiently pled a common purpose. Based on the facts alleged, Defendants worked together to use Memphis Pool's resources to conduct a side business in direct competition with their employer. Mr. Roberson's position as manager allowed him to coordinate the scheme and divert supplies from Plaintiff. Doc. 19 at 10. The Complaint also points to communications between the Defendants related to the scheme, reflecting a relationship related to the enterprise. *Id*. at 12-13. Finally, while the alleged scheme was uncovered in June 2025, the Complaint states that it was ongoing since at least August 2023. *Id*. at 12-13. Because of the

4

"breadth of the enterprise concept" under *Boyle*, the Complaint has sufficiently pled the existence of an association with a common purpose.

## II.    Pattern of Racketeering Activity

A "pattern of racketeering activity" requires at least two acts of racketeering activity occurring within ten (10) years of each other. 18 U.S.C.A. § 1961(5). "A pattern of racketeering activity is established by showing 1) a relationship between predicate acts, and 2) the threat of continuity." *Beard v. Worldwide Mortg. Corp.*, 354 F. Supp. 2d 789, 804 (W.D. Tenn. 2005). Here, Plaintiff alleges predicate acts of mail and wire fraud pursuant to 18 U.S.C. §§ 1341 and 1343. Doc. 19 at 18. "Both types of fraud require (1) a scheme to defraud, (2) the use of the mails or wires to further the scheme, and (3) an intent to deprive the victim of money or property." *Lint Chiropractic PC*, 735 F. Supp. 3d at 843 (*citing United States v. Turner*, 465 F.3d 667, 680 (6th Cir. 2006)). "A scheme to defraud includes any plan or course of action by which someone uses false, deceptive, or fraudulent pretenses, representations, or promises to deprive someone else of money." *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 404 (6th Cir. 2012).

Plaintiffs alleging fraud must "meet the more rigorous pleading standards of [Federal Rule of Civil Procedure 9(b),]" which provides that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *Id*. at 403 (quoting Fed. R. Civ. P. 9(b)). "Courts rigorously enforce Fed.R.Civ.P. 9(b)'s pleading requirements in RICO cases in which the 'predicate acts' are mail fraud and wire fraud, and have further required specific allegations as to which defendant caused what to be mailed (or made which telephone calls), and when and how each mailing (or telephone call) furthered the fraudulent scheme. " *Thomas v. Daneshgari*, 997 F. Supp. 2d 754, 763 (E.D. Mich. 2014). "In order to allege fraud with particularity, the plaintiff[ ], at a minimum, must allege the time, place, and content of the alleged

5

misrepresentation on which [it] relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Aaron v. Durrani*, 2014 WL 996471, at *6 (S.D. Ohio 2014) (citation omitted). "[A]n exception to the particularity requirement of Fed.R.Civ.P. 9(b) exists when the relevant facts 'lie exclusively within the knowledge and control of the opposing party.'" *Beard*, 354 F. Supp. 2d at 799. "In such a case, pleading upon information and belief is permissible, although the plaintiff must still plead a statement of facts upon which the belief is based." *Id*.

> The facts alleged in the Complaint relating to mail and wire fraud are as follows:
>
> 53. Roberson and one or more of the other Defendants caused inflated and fraudulent invoices for parts, chemicals, products, and other inventory, in excess of what Memphis Pool's customers actually needed and received, to be prepared and sent through the United States Postal Service. Doc. 19 at 10-11.
>
> 64. For example, on August 29, 2023, Roberson sent his location to Hisaw's Memphis Pool cellphone at two different addresses with pools, neither of which were Memphis Pool customers, so Defendants could carry out work for their unauthorized side business. *Id*. at 12-13.
>
> 65. As further example, on September 28 2024, Hisaw, using Memphis Pool's cellphone assigned to him, sent Roberson a text message regarding payment for his unauthorized side work. *Id*. at 13.
>
> 101. At all times relevant, the enterprise was engaged in, and its activities affected, interstate commerce because many of the Defendants performed services to addresses in different states, caused inflated and fraudulent invoices to be sent through the United States Postal Service to addresses in different states, and used the Internet, mail, and telephone to conduct the above-described fraudulent enterprise. *Id*. at 18.

The Complaint posits that mail fraud occurred each time Mr. Roberson submitted fraudulent invoices. However, Plaintiff must establish "which defendant caused what to be mailed (or made which telephone calls), and when and how each mailing (or telephone call) furthered the fraudulent scheme." *Thomas*, 997 F. Supp. 2d at 763.

6

First, Plaintiff does not identify the individuals involved in the fraudulent billing aside from Mr. Roberson. It often states that "one or more defendants" engaged in certain practices, without ever specifying the defendants to which it is referring. "A complaint 'may not rely upon blanket references to acts or omissions by all of the 'defendants,' for each defendant named in the complaint is entitled to be apprised of the circumstances surrounding the fraudulent conduct with which he individually stands charged.'" *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 643 (6th Cir. 2003). The allegations relating to Mr. Hisaw merely state vaguely that he communicated with Roberson in connection with the "unauthorized side work" concerning a location and "regarding payment." And three of the named Defendants, Mr. Holtzclaw, Davis Brown, and Daniel Brown are not implicated in allegations of mail or wire fraud at all. The allegations that these three Defendants wiped their sim cards on their work phones, or refused to return their work phone, are not sufficient to establish they committed wire fraud. Doc. 19 at 15.

Second, Plaintiff fails to detail when and how each communication furthered the fraudulent scheme. Plaintiff relies on data comparing costs/sales for three months year over year. Doc. 19 at 11. In the case of long-running fraudulent schemes, it is not necessary to plead *every* instance of fraud that has occurred. *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 509 (6th Cir. 2007). However, Plaintiff should "provide *some* representative examples of [Defendants'] alleged fraudulent conduct, specifying the time, place, and content of their acts and the identity of the actors." *Id*. at 510 (internal citations omitted). Plaintiff has apparently been investigating this issue, and its invoices are squarely within its control; Plaintiff therefore should be able to point to specific occurrences of the fraud and on what date the invoices were mailed and by who. Instead, Plaintiff has provided general cost increases between 2024 and 2025. The pleading fails to provide the level of particularity required to put the Defendants on notice of the specific charges against them.

7

Because Plaintiff has failed to plead mail fraud with the required particularity, it is unable to establish two predicate acts as required by RICO. Therefore, Plaintiff's RICO claims are **DISMISSED**. Because this is the first order of dismissal, the dismissal is **WITHOUT PREJUDICE.** Plaintiff must **REPLEAD WITHIN 14 DAYS** if it wishes to replead.

### III.    Supplemental Jurisdiction

Defendants also ask this Court to decline supplemental jurisdiction over the remaining state law claims. Doc. 35-1 at 13. Plaintiff asserts it has adequately pled its RICO claim and does not address supplemental jurisdiction in the event original jurisdiction is lost. Doc. 41 at 15.

This Court has original subject matter jurisdiction over Plaintiff's RICO claim pursuant to 28 U.S.C. § 1331; it has supplemental jurisdiction over Plaintiff's related state-law claims under 28 U.S.C. § 1367. "Such supplemental jurisdiction does not disappear when the federal claim that gave rise to original jurisdiction in the first place is dismissed." *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012). "Following such a dismissal, the district court in its discretion may properly choose whether to exercise § 1367(a) jurisdiction over the supplemental state-law claims; however, such a decision is 'purely discretionary.'" *Id*.

"[A] federal court that has dismissed a plaintiff's federal-law claim should not ordinarily reach the plaintiff's state-law claims." *Michigan Elec. Emps. Pension Fund v. Encompass Elec. & Data, Inc.*, 556 F. Supp. 2d 746, 782 (W.D. Mich. 2008). "Justice and comity are served by deferring to [Tennessee's] courts, which are best equipped to interpret and apply their own State's law." *Id*. Therefore, if Plaintiff does not replead, this Court will not exercise supplemental jurisdiction over the remaining state law claims.

### **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss is **GRANTED** without prejudice. Plaintiff must **REPLEAD WITHIN 14 DAYS** if it wishes to replead. If Plaintiff does not replead within 14 days, the case will be dismissed with prejudice.

**SO ORDERED**, this 26th day of May, 2026.

*s/Brian C. Lea*  
BRIAN C. LEA  
UNITED STATES DISTRICT JUDGE
